UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA – GREENSBORO

CASE NUMBER:

THE BINSKY CORPORATION D/B/A
ADVANTAGE FOOD & BEVERAGE, an Ohio
Corporation,

      Plaintiff,

v.

USCONNECT, LLC, a North Carolina limited liability
company, and GLOBALCONNECT, LLC, a North
Carolina Limited liability company,

      Defendants.

**COMPLAINT**

Plaintiff THE BINSKY CORPORATION D/B/A ADVANTAGE FOOD & BEVERAGE,

an Ohio corporation ("Plaintiff" or "Advantage"), brings this action against Defendants

USCONNECT, LLC, a North Carolina limited liability company ("USConnect"), and

GLOBALCONNECT, LLC, a North Carolina limited liability company ("GlobalConnect")

(USConnect and "GlobalConnect" collectively "Defendants"). In support of its Complaint,

Plaintiff alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332,

under which federal courts may hear cases in which a citizen of one State sues a citizen of

another State and the amount at stake is more than $75,000. As such, this Court has jurisdiction

based on diversity of citizenship in that, as set forth below, Plaintiff is an Ohio corporation and

Defendants are North Carolina limited liability companies, whose members are, upon

information and belief, residents of states other than Ohio.

2.     This Court has personal jurisdiction over Defendants, and venue is proper in this Court in that Defendants are North Carolina limited liability companies, with their principal place of business in Guilford County, North Carolina.

3.     Defendant USConnect, LLC is a North Carolina limited liability company with its principal place of business at 324 South Elm Street, Suite 400, Greensboro, North Carolina 27401. Upon information and belief, none of its members are residents of Ohio.

4.     Defendant GlobalConnect, LLC is a North Carolina limited liability company with its principal place of business at 324 South Elm Street, Suite 400, Greensboro, North Carolina 27401. Upon information and belief, none of its members are residents of Ohio.

5.     Jeff Whitaker is the Manager of both USConnect and GlobalConnect, and has held himself out to be the CEO of both companies. He and others have consistently communicated with Plaintiff, apparently on behalf of GlobalConnect, to address matters at issue in this Complaint.

6.     Plaintiff THE BINSKY CORPORATION D/B/A ADVANTAGE FOOD & BEVERAGE is an Ohio corporation with its principal place of business at 2746 Sherwood Road, Bexley, Ohio 43209.

7.     The amount in controversy is more than $75,000 exclusive of interest and costs of court.

## FACTS RELATED TO TERMINATION FEES/OFF-BOARDING CHARGES

8.     USConnect, directly or through one or more contractors or subcontractors, provides services including telemetry connectivity, cashless payment fulfillment, inventory tracking, a national account sales program (which may include centralized billings), advertising, data analytics, and a proprietary payment and rewards program (which may consist of a payroll deduction interface), and client data aggregation dashboards to parties engaged in the business of

2

providing vending services of food, beverage and other products, including through automated vending machines, at cafeteria and other dining locations, and through self-service retail kiosks.

9.     Advantage was a vending company specializing in micro markets, which are essentially unmanned micro convenience stores located within closed-to-the-public locations, such as large law firms. These micro markets are designed to operate without on-site personnel, relying instead on video surveillance systems to ensure security and prevent theft. Advantage operated a national account program developed by USConnect, which allowed Advantage access to additional parties seeking coordinated vending solutions to be provided through Advantage at multiple locations throughout the United States, as marketed and coordinated by USConnect.

10.     Upon information and belief, GlobalConnect operates the same type of business as USConnect and is an attempt at rebranding USConnect.

11.     On information and belief, Whitaker has entered into agreements with Amazon on behalf of GlobalConnect that directly impact USConnect's relationship and obligations with Advantage. Whitaker's blurring of corporate boundaries through his dual management roles, with both USConnect and GlobalConnect sharing the same principal office address and unified communications, has eliminated any meaningful separation between USConnect and GlobalConnect.

12.     Upon information and belief, the acts complained in this complaint against Advantage were performed by both USConnect and GlobalConnect, and therefore both Defendants are jointly and severally liable to Advantage for their actions.

13.     On or about April 20, 2021, Plaintiff and USConnect entered into a "USCONNECT SERVICES AND LICENSE AGREEMENT" ("License Agreement"). The term of the License Agreement was five (5) years commencing on April 20, 2021. The primary purpose of the

License Agreement was to set forth the terms under which USConnect provides various services and licenses certain proprietary intellectual property to Advantage, which is engaged in the business of providing vending services for food, beverages, and related products. The License Agreement established a framework for Advantage's use of USConnect's services, technology, and branding in its vending operations, which includes specific provisions regarding equipment, data, fees, intellectual property, confidentiality, and the parties' respective rights and obligations.

14. The License Agreement does not have a provision that specifically addresses the rights of the parties to assign the agreement to a third party. There is no provision that prohibits Advantage from assigning the License Agreement to a third party or that third party from assuming the agreement.

15. Section 9 of the License Agreement provides as a ground for USConnect to terminate the License Agreement:

> 9. Termination
>
> 9.1 <u>Event of Default</u>. The occurrence of any one or more of the following events shall constitute an event of default by Operator under this Agreement (each, an "Event of Default"):
> . . .
> (vi) Operator sells or agrees to sell all or substantially all of its business or assets to any other party without the prior written consent of USConnect (which consent may be withheld, conditioned, or delayed in the sole discretion of USConnect);
> . . .
>
> 9.2 <u>USConnect Rights to Terminate this Agreement</u>. Upon the occurrence of any one or more Events of Default, subject to notice and opportunity to cure (if any), USConnect may in its sole discretion terminate this Agreement immediately upon notice to Operator.
> . . .

4

16.     On or about July 1, 2024, Advantage informed USConnect that Advantage intended to sell the majority of its assets to a third party, Continental Café, LLC dba Cuyahoga Franklin Group ("Continental").

17.     Advantage informed USConnect that it anticipated closing in 30 days, around July 31, 2024. Advantage wrote: "Please let us know how we can help make this transition smooth for you, Continental, and, most of all, our mutual customers." In doing so, Advantage afforded USConnect the opportunity to allow Continental to assume Advantage's License Agreement, or to enter into a new license agreement with Continental.

18.     On July 2, 2024, Konrad Alvarino, Senior VP of Operations of USConnect and GlobalConnect, wrote to Advantage: "I would like to have a call with you to explain our standard offboarding process. It includes dispositioning the card balances and all existing liabilities during the 30 day period. The offboarding team has been informed and has started this process. Let me know when you would be available for a call."

19.     On July 9, 2024, Daryl Binsky, Treasurer of Advantage, wrote to Vikki Taylor, Controller of USConnect and GlobalConnect ("Ms. Taylor"): "We have been incredibly positive when talking about USConnect to Continental, we have encouraged them to continue to use the platform and use the hardware going forward."

20.     The License Agreement required the use of specific hardware from third-party vendors, including LYNK devices, Crane credit card devices, and self-checkout kiosks, all of which were integrated into their vending and micro market operations. Upon the sale of Advantage's business to Continental, Advantage transferred to Continental all vending machines, currency changers and validators, coin changers, micromarket, equipment, food service equipment, and all other equipment and machines utilized in connection with Advantage's business.

Case 1:25-cv-01043     Document 1     Filed 11/14/25     Page 5 of 24

21.     Upon information and belief, USConnect and/or GlobalConnect then assigned the same hardware and device contracts to Continental, resulting in a direct continuation of hardware use and associated fees under the new operator.

22.     On July 11, 2024, Daryl Binsky informed Ms. Taylor that the buyer, Continental, had expressed interest in continuing the LYNK programs, and Mr. Binsky raised the possibility of Continental assuming Advantage's LYNK contract.

23.     LYNK refers to a telemetry hardware device provided by USConnect or its affiliates. The LYNK device enables cashless, credit card readers which had integrated loyalty and other consumer and client-facing services for vending and self-service retail equipment.

24.      The LYNK program is a specific promotional offering related to the purchase and use of LYNK telemetry devices, governed by its own set of terms and a separate agreement.

25.      USConnect and/or GlobalConnect did not assist with the transfer of the LYNK contract from Plaintiff to Continental.

26.     Rather than working to transfer the License Agreement to Continental , USConnect and/or GlobalConnect chose to proceed to collect from Plaintiff certain termination/offboarding fees.

27.     Only after USConnect and/or GlobalConnect collected and/or withheld the calculated termination/offboarding fees from Advantage, did USConnect and/or GlobalConnect then enter into a contract with Continental under which it received a windfall as explained below. Had USConnect and/or GlobalConnect allowed the License Agreement to be assigned by Advantage to Continental, then Advantage would not have been required to pay the termination/offboarding fees.

6

28.     Meanwhile, on July 16, 2024, Ms. Taylor acknowledged: "At this point the offboarding process is proceeding as normal <u>with the assumption that no one will assume the contract. Should this change, we will make the necessary adjustments</u>." (emphasis added).

29.     On July 9, 2024, Ms. Taylor sent Advantage the following invoices: 153557, 153558, 153604, and 153848, for a total sum of $430,405.36.

30.     After further correspondence between Ms. Taylor and Advantage, Ms. Taylor sent Advantage an email on July 19, 2024, demanding that Advantage send an overnight payment of $327,316.69 to USConnect, which was based upon the July 9th invoices, some additional invoices, and a credit in favor of Advantage for deposits collected by USConnect and/or GlobalConnect.

31.     The following chart provides a breakdown of the $327,316.69 payment:

| The Amount USConnect Collected from Advantage | |
|---|---|
| Invoice 153848 | $122,033.90 |
| Invoice 153558 | $17,500.00 |
| Invoice 153557 | $214,833.55 |
| Invoice 153604 | $76,037.91 |
| Invoice 153000 | $10,087.12 |
| Invoice 153366 | $454.99 |
| Invoice 153117 | $2,500.00 |
| Invoice 153607 | $2,464.74 |
| Invoice 154369 | $2.15 |
| Collectively ("Invoices") | |
| **Sub Total:** | $445,914.36 |

7

| Deposits USConnect and/or GlobalConnect collected on behalf of Advantage | |
| --- | --- |
| 06/30 – Truist Deposit (June 25–30): | $31,752.73 |
| 07/01 – Truist Deposit (July 1): | $1,904.83 |
| 07/08 – Truist Deposit (July 2–8): | $26,710.17 |
| 07/09 – Credit Memo #153665: | $26,262.96 |
| 07/15 – Truist Deposit (July 9–15): | $31,966.98 |
| Collectively ("Credit") | |
| **Sub Total:** | $118,597.67 |
| | |
| Credit Subtracted from Invoices | $445,914.36 - $118,597.67 |
| **("Collected Amount") Total:** | **$327,316.69** |

32. On July 19, 2024, Advantage paid USConnect $327,316.69, not because it agreed that all the charges were proper, but rather to ensure that essential services supporting customer account continuity were not disrupted by USConnect and/or GlobalConnect. Advantage also wanted to avoid late charges/interest that USConnect and/or GlobalConnect threatened.

33. Of this Collected Amount, Advantage disputes that it owes USConnect and/or GlobalConnect a total amount of $139,533.90 for invoices 153558 ($17,500.00) and 153848 ($122,033.90), which collectively represent unwarranted termination fees ("Termination Fees").

34. At the time of termination of the License Agreement, the remaining term under that agreement was 22 months.

35. Plaintiff is informed and believes and thereon alleges that USConnect and/or GlobalConnect has, since the date of the termination of Advantage's License Agreement, taken

the same hardware and software devices that Advantage was using and assigned those to

Continental at the same rates for twenty-four (24) months

36.     In other words, USConnect and/or GlobalConnect has essentially assigned the License

Agreement from Advantage to Continental.

37.     On July 11, 2024, Jeff Whitacre wrote to Plaintiff:

> I will make sure that no auto-reloads are discontinued on any of the user accounts until July 31st as I do not wish to disrupt the users and or clients or worry you guys. As far as I'm concerned you all are members in good standing until the time of the sale of your company and thus, no changes will be made to any of your user accounts and those will be handled consistent with how they have been handled in the past.  . . . . That said, Frank, also copied, is in discussions with the company purchasing you guys to see if there is a path forward for us working with them, but that is still undetermined at this time.

38.     Despite USConnect and/or GlobalConnect's prior representations that it would "make the

necessary adjustments" to the "offboarding process" with respect to the offboarding/Termination

fees should the License Agreement be assumed by Continental, no adjustments/refunds were

made to Advantage after USConnect and/or GlobalConnect secured the contract with Continental

for all the payments Advantage would have made under its License Agreement with USConnect

and/or GlobalConnect through the end of the term of that contract.

39.     USConnect and/or GlobalConnect have taken a windfall profit/double recovery, which

the law does not allow.

40.     Under North Carolina law, a party to a commercial contract has a duty to mitigate its

damages. This principle is rooted in the doctrine of avoidable consequences, which requires an

injured party, whether in tort or contract, to exercise reasonable care and diligence to avoid or

lessen the consequences of the other party's breach. If the injured party fails to mitigate damages,

it cannot recover for the portion of the loss that could have been avoided through reasonable

efforts. *Miller v. Miller*, 273 N.C. 228, *Watson v. Storie*, 60 N.C. App. 736, *Justus v. Rosner*, 371 N.C. 818.

41.     Here, USConnect and/or GlobalConnect could have (and in fact did ultimately) avoid all of the disputed damages (Termination Fees) that it collected from Advantage. USConnect and/or GlobalConnect acted in an unfair and bad faith manner when USConnect and/or GlobalConnect essentially declared Advantage in breach of the License Agreement, and did not mitigate USConnect's and/or GlobalConnect's damages by entering into an agreement with Continental at that time.

42.     Only after charging and/or withholding funds from Advantage for alleged Termination Fees, did USConnect and/or GlobalConnect enter into an agreement with Continental for a twenty-four (24) month term, under which USConnect and/or GlobalConnect has been and continues to collect the sums it charged to Advantage as Termination Fees, due to the termination of Advantage's Agreement twenty-two (22) months prior to the expiration of its term.

43.     This is a double recovery and windfall to USConnect and/or GlobalConnect, and the law abhors the same. Well-established North Carolina case law sets forth the common law principle that one should not be permitted a double recovery for a single injury.

### FACTS AS TO AMAZON SHRINKAGE MONIES OWED TO ADVANTAGE

44.     Advantage operated micromarkets, self-service retail kiosks, in Amazon distribution centers, selling food products and beverages to Amazon employees. Payments for shrinkage claims (theft by Amazon employees) and sales are routed through GlobalConnect, which deducts a twenty percent (20%) commission before remitting the balance to Advantage.

45.     Payments related to the billings through Amazon are governed by Section 5.3 of the License Agreement, which provides:

Provide Goods and Services Supporting Centralized Billing. In support of USConnect's Centralized billing Initiative, the Operator covenants and agrees to receive purchase orders from national accounts clients for the provision of goods to USConnect Sites, to timely fill and deliver the goods covered in all such orders to the USConnect Site, and to invoice USConnect for such goods at prices prearranged with USConnect. USConnect will pay all properly invoiced amount to Operator as part of the remitting of Operator receipts on hand from time to time no later than fifteen (15) days following receipt by USConnect of payment from the national account client for such goods.

46.     Amazon reimbursed all shrinkage above five percent (5%) to Advantage.

47.     On January 30, 2024, Michael Wilson, SVP Client Services of USConnect and/or GlobalConnect, sent Advantage an email, Subject: Re: CLE2 Shrink Payout, advising Advantage:

As you know we've been working with Amazon on outstanding shrink for quite some time now, and we're continuing to push for all shrink to be paid through 2023. A certain segment of sites that they have categorized as NACF sites (North America Customer Fulfillment) are managed by a Finance group called SPOC (Site Procurement Operations Center) which oversees the finances of these sites. This Finance group decided that some sites with excessive shrink invoices would not be paid in full and offered a reduced payment amount. They didn't offer an option or open the dialogue to negotiations on this, so it left us with no choice but to accept. With this acceptance, we informed Amazon this would only be a one-time occurrence and must be paid on expedited terms. GlobalConnect is also taking a financial impact just like the affiliates.

If you approve this payment, you will receive the payout listed below on your ACH statement this week by simply replying to this email, with "accept".

For your site CLE2 Q1, Q2, & Q3 of 2023 combined…
•  _Combined = your invoice amount $285,783
•  _Final amount of payout = $119,076…difference of $166,707
•  _Invoice #'s associated with the payouts = 4119, 41631, 42093

Lastly, we did inform Amazon that we would not be accepting future short payments on shrink.

48.     Advantage did not reply to that email and did not inform USConnect and/or GlobalConnect that it accepted the reduction in payment set forth therein. Nor did Advantage agree at any time to accept anything short of the $285,783 owed on the relevant Amazon invoices.

49.     On February 26, 2024, Jeff Whitacre, President of USConnect and GlobalConnect, sent a

letter to Advantage, and other US Connect licensees, stating:

Dear Affiliates,

I wanted to inform you all that we are in receipt of Amazon's Phase 2 second list that includes another large batch of sites to be transitioned this year. I cannot express to you my level of disappointment as I know this is devastating to all of us and more importantly, it just isn't right. Not only did we do everything Amazon asked us to do under the guise of maintaining sites and lessoning the impact of the Phase 2 transitions, but we all performed well above expectations during Peak which we were told had a lot to do with the Phase 2 list of sites to be transitioned. I now feel that was completely untrue and we were deceived.

Let me start by stressing the significance of us all sticking together and remaining united as I feel we were all wronged and that there was more afoot than what looks apparent to this RFP result. **I have not given you a reason to doubt that I will always do what's right and in that spirit, I can assure you all that I will do everything I can to see to it that you are paid in full for everything you're owed from Amazon currently and through your last day of service. This will also include any shrink discounts that were given to Amazon for the period from of Q1–Q3 2023. Whether I get those funds from Amazon or pay them myself, you will get paid and at 100%, so there is no need to stress about that, if you will stay the course with me and the other affiliates and do the following:**

    • Continue to give Amazon the best level of service at all impacted sites through your final date of service and until your impacted sites transition to a new vendor, and

    • Coordinate the transition of your impacted sites to the new vendor in a professional manner, which would also include any negotiating for equipment, etc. that you'd like to sell to them.

If those things are done, **then I guarantee you that you will be paid in full.** This is who we are, professional, independent companies that have done everything possible to provide the best level of service to Amazon even though we were treated very unfairly in return.

Now, for the other part of the action plan. I am and have been in close contact with GlobalConnect's attorneys, Womble Bond Dickinson, about Amazon's activities as it relates to GlobalConnect and its affiliates during the RFP process and up until now. We have just concluded a meeting at which we have established short term, medium term, and longer-term actions. We will document all grievances, establish the legal path forward and put a plan into motion. I am not ok with how we've been

12

treated and will not sit still for this, but please give me the time to do it right and at the direction of the legal team.

Again, we must all stick together, and keep our level of professionalism to the highest standards, the way we've always done it and we will prevail. My team and I will be reaching out to you all personally to discuss more details on a call.

(Emphasis added.)

50.     In reliance upon this guaranty from USConnect and/or GlobalConnect on February 26, 2024, Advantage continued to perform as requested by continuing to provide services to Amazon until the final date of service on impacted sites and to coordinate the transition to the new vendor on the impacted sites.

51.     Contrary to these representations and without Advantage's consent, USConnect and/or GlobalConnect agreed to reduce the amount of the invoices payable by Amazon (or its affiliate).

52.     Upon receipt of the reduced amounts from Amazon, USConnect and/or GlobalConnect failed to pay Advantage within 15 days of the receipt of the funds as required under Section 5.3 of the License Agreement.

53.     Despite its prior representations to Advantage and despite not having previously agreed to accept less than the amount to which USConnect and/or GlobalConnect were obligated to pay under the License Agreement for the Amazon account, USConnect and/or GlobalConnect wrongfully withheld and refused to release amounts owed to Advantage and pressured Advantage to accept a reduced sum in the amount of $135,093.20 on March 8, 2024.

54.     These actions were a breach of USConnect's obligations under the License Agreement, including but not limited to USConnect's failure to pay Advantage within 15 days of its receipt of funds from Amazon.

55.     As set forth above, on February 26, 2024, Jeff Whitacre guaranteed Advantage that if Advantage performed as requested, which it did, that Advantage would be paid for everything it

was owed by Amazon as of February 26, 2024 and through the last day of service to Amazon, including the shrink discounts that were given to Amazon for the period from Q1-Q3 2023.

56.     Advantage is still owed $166,707.18 for the balance of the Q1-Q3 2023 shrinkage. Additionally, USConnect also owes Advantage an additional $42,569.40 for Invoice Amazon Shrinkage billed after Q3 2023, under the following invoices:

| Invoice Number | Date | Shrinkage Amount Billed | Less 20% Processing Fee | Amount Paid by USConnect and/or GlobalConnect | Amount Due |
| --- | --- | --- | --- | --- | --- |
| 43123 | 3/31/2024 | $156,250.08 | ($31,250.04) | $85,871.13 | $39,128.91 |
| 43565 | 6/30/2024 | $2,538.22 | ($507.64) | $0 | $2,030.58 |
| 43705 | 8/28/2024 | $1,762.38 | ($352.47) | $0 | $1,409.91 |

57.     Based on the foregoing, USConnect owes Advantage at least $209,276.58 for the Amazon Shrinkage.

### FIRST CAUSE OF ACTION
### Breach of License Agreement – Amazon Shrinkage
### (Against USConnect)

58.     Advantage realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth herein in full.

59.     Advantage and USConnect are parties to the License Agreement.

60.     Advantage has performed all or substantially all of its obligations under the License Agreement, or has otherwise been excused from performance of any obligations alleged not to have been performed.

61.     USConnect breached the License Agreement by withholding from and failing to pay Advantage the amount owed to Advantage under its shrinkage invoices.

14

62.     As a direct and proximate result of USConnect's breach of the License Agreement, Advantage has been damaged in an amount to be proven at the time of trial.

## SECOND CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing – Amazon Shrinkage
### (Against USConnect)

63.     Advantage realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth herein in full.

64.     In every contract or agreement, there is an implied covenant of good faith and fair dealing. This means that each party has a duty not to do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

65.     Advantage entered into the License Agreement with USConnect. Therefore, USConnect had a duty to comply with the implied covenant of good faith and fair dealing.

66.     Advantage has performed all or substantially all of its obligations under the License Agreement, or has otherwise been excused from such performance.

67.     USConnect has unfairly interfered with Advantage's right(s) to receive the benefits of the License Agreement by withholding from and failing to pay Advantage the amount to owed to Advantage under its shrinkage invoices.

68.     As a direct and proximate result of USConnect's breach of the implied covenant of good faith and fair dealing with respect to the License Agreement, Advantage has suffered, and continues to suffer, damages in an amount to be proven, which meets the jurisdictional limits of this Court.

## THIRD CAUSE OF ACTION
### Accounting – Amazon Shrinkage
### (Against USConnect and GlobalConnect)

69.     Advantage realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth herein in full.

70.     Advantage, on the one hand, and Defendants, on the other hand, are in a relationship that requires Defendants to provide an accounting to Advantage.

71.     The information necessary to determine the amount owed to Advantage f is within the exclusive knowledge and control of Defendants.

72.     Advantage's legal remedies are inadequate to ascertain the amount owed.

73.     Defendants have refused or failed to provide a detailed accounting of the financial matters related to the Amazon Shrinkage issue.

74.     As a result of Defendants' refusal or failure to provide an accounting, Advantage is unable to determine the full extent of the financial imbalance and the exact amount owed.

75.     Advantage is entitled to an order from this Court compelling Defendants to provide a detailed accounting of all financial matters related to the relationship between the parties, including but not limited to: the Amazon Shrinkage billing communications/invoices that Defendants submitted to Amazon as to each of Defendants' licensees, including but not limited to Advantage; any communications/responses/payments Defendants received from Amazon related to the Amazon Shrinkage billing communications/invoices that Defendants submitted to Amazon as to each of Defendants' licensees, including but not limited to Advantage; and, any documents reflecting any settlement of any above issues.

76.     Following the accounting, Advantage is entitled to a judgment in the amount found to be owed to Advantage, along with any other appropriate relief deemed just and proper by the Court,

including but not limited to a declaration that: (1) Defendants materially breached the License Agreement; (ii) that due to such material breach(es) of the License Agreement by USConnect, Advantage owes USConnect no further duties under the License Agreement, and said License Agreement is void.

<div align="center">

**FOURTH CAUSE OF ACTION**
**Money Had and Received - Offboarding/Termination Fees**
**(Against USConnect and GlobalConnect)**

</div>

77.     Advantage realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth herein in full.

78.     As set forth more fully above, Defendants demanded payment from Advantage and/or withheld certain monies Defendants had collected on Advantage's behalf and which were owed to Advantage and were not paid to Advantage.

79. Defendants demanded that Advantage pay Defendants $327,316.69, which Plaintiff did pay under threat by Defendants that it would interrupt Advantage's business if this sum were not paid.

80.     The Termination Fees for invoices 153558 ($17,500.00) and invoice 153848 ($122,033.90) were not rightfully owed to Defendants.

81.     Defendants' retention of these Termination Fees is unjust under the principles of equity and good conscience, and if Defendants were to retain these funds, it would be unjustly enriched at the expense of Advantage.

82.     In equity and in good conscience, these monies should be disgorged from Defendants and paid to Advantage.

## FIFTH CAUSE OF ACTION
## Breach of License Agreement – Offboarding/Termination Fees
## (Against USConnect)

83. Advantage realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth herein in full.

84. As set forth more fully above, Advantage and USConnect are parties to the License Agreement.

85. Advantage has performed all or substantially all of their obligations under the License Agreement, or has otherwise been excused from performance of any obligations alleged not to have been performed.

86. USConnect breached the License Agreement by charging Advantage and/or withholding funds from Advantage under the guise of offboarding or Termination Fees.

87. As a direct and proximate result of USConnect's breach of the License Agreement, Advantage has been damaged in an amount to be proven at the time of trial.

## SIXTH CAUSE OF ACTION
## Breach of the Implied Covenant of Good Faith and Fair Dealing –
## Offboarding/Termination Fees
## (Against USConnect)

88. Advantage realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth herein in full.

89. In every contract or agreement, there is an implied covenant of good faith and fair dealing. This means that each party has a duty not to do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

90. Advantage entered into the License Agreement with USConnect; thus, USConnect had a duty to comply with the implied covenant of good faith and fair dealing.

91.     Advantage has performed all or substantially all of its obligations under the License Agreement, or has otherwise been excused from such performance.

92.     USConnect has unfairly interfered with Advantage's right(s) to receive the benefits of the License Agreement by charging Advantage and/or withholding funds from Advantage under the guise of offboarding or Termination Fees.

93.     USConnect did not act in good faith when it collected and retained the offboarding or Termination Fees by treating the conclusion of Advantage's relationship with it as a termination of the License Agreement rather than as an assignment to Continental.

94.     As a direct and proximate result of USConnect's breach of the implied covenant of good faith and fair dealing with respect to the License Agreement, Advantage has suffered, and continues to suffer, damages in an amount to be proven.

<div align="center">

**SEVENTH CAUSE OF ACTION**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act,**
**N.C. Gen. Stat. § 75-1.1 *et seq.* – Amazon Shrinkage and Offboarding/Termination Fees**
**(Against USConnect and GlobalConnect)**

</div>

95. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth herein in full.

96. At all times relevant to the facts and circumstances giving rise to this action, Defendants engaged in activities affecting commerce within the meaning of Chapter 75 of the North Carolina General Statutes.

97. The actions of Defendants as alleged above constitute unfair and deceptive acts or practices in violation of N.C. Gen. Stat. §§ 75-1.1 et seq. Defendants' unfair and deceptive acts include related to the Amazon Shrinkage and the offboarding/Termination Fees, as alleged above, have resulted in damages to Advantage.  Defendants are also committing other willful, wanton, reckless, intentional, unlawful, oppressive, unscrupulous, and wrongful acts, as more

<div align="center">19</div>

specifically described above. Defendant's actions constitute the type of egregious commercial misconduct the statute was designed to prevent.

98. As alleged above, the following allegations support Defendants' violation of N.C. Gen. Stat. §§ 75-1.1 *et seq*.;

    a. Under North Carolina law, unfair practices include conduct that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 172 N.C. App. 427*.

    b. Defendant unilaterally accepted Amazon's reduced payment offer without obtaining Advantage's consent, then pressured Advantage to accept after the fact. This misrepresentation of the decision-making process constituted a deceptive practice that has the capacity to mislead, as it falsely suggested that Advantage had no recourse but to accept the deal offered by Defendant.

    c. The Defendants engaged in, at the bare minimum, immoral, unethical, oppressive, and unscrupulous conduct by withholding legitimately owed Amazon funds to coerce Advantage's acceptance of reduced payments.

    d. Plaintiff is informed and believes, and thereon alleges that USConnect and/or GlobalConnect engaged in unfair trade practices by collecting offboarding/Termination Fees from Advantage while simultaneously entering into a contract with Continental for the identical services and hardware. The Defendants demanded and collected $327,316.69 from Advantage, including the disputed Termination Fees of $139,533.90. After collecting Termination Fees, Defendant assigned the same hardware and software devices that Advantage was using to Continental at the same rates for twenty-four months (24), when

Advantage's remaining term was only twenty-two months (22). As a result, Defendant gained two (2) months of additional payments by contracting with Continental.

e.   The Defendants employed coercive tactics by demanding overnight payment of $327,316.69, threatening to disrupt Advantage's essential services if payment was not made immediately, and imposing interest charges.

f.   Defendant failed to mitigate its alleged damages by not immediately entering into an agreement with Continental and instead sought first to collect offboarding /Termination Fees from Advantage, and only after said fees were collected, did Defendant elect to contract with Continental. Defendant could have avoided all offboarding /Termination Fees by entering into an agreement with Continental immediately.

g.   Defendant engaged in, at the bare minimum, immoral, unethical, oppressive, and unscrupulous conduct by engaging in the retention of offboarding/Termination Fees while simultaneously collecting payments from Continental for the same services, thereby creating a double recovery, engaging in coercive tactics, and failing to mitigate its damages.

h.   Defendant's conduct in essentially treating the transaction as both a termination requiring offboarding/ Termination Fees and an assignment of the same contract terms demonstrates the deceptive nature of their practices.

i.   Under North Carolina law, unfair practices include conduct that "denotes a practice that "has the capacity or tendency to deceive."" *Id. at 427.*

j.  Jeff Whitacre's February 26, 2024, letter contained explicit guarantees that constitute deceptive practices when viewed against the Defendants' subsequent conduct. Whitacre guaranteed that Advantage would be paid in full for everything owed from Amazon, stating, **"**whether I get those funds from Amazon or pay them myself, you will get paid and at 100%, so there is no need to stress about that…"

k.  These representations were made to deceive Advantage into continued performance, and Advantage reasonably relied on them by continuing to provide services to Amazon and coordinating site transitions. The subsequent failure to honor these guarantees demonstrates the deceptive nature of the original promises.

l.  Defendant engaged in deceptive practices by representing that it would make the necessary adjustments to the offboarding process should the License Agreement be assumed by Continental, yet failing to provide any adjustments or refunds after securing the Continental contract.

99.    Further, Advantage is informed and believes that Defendants are secreting monies received from Amazon to bolster their bottom-line revenue instead of paying Advantage what it is owed on the Amazon Shrinkage. As the Defendant was the intermediary handling payments between Amazon and Advantage, Defendant occupied a position of trust that it exploited for their own benefit.

100.    Under North Carolina law, Defendants' actions constitute unfair and deceptive trade practices in or affecting commerce, within the meaning of N.C. Gen. Stat. § 75-1.1. Defendants'

acts and omissions were designed and intended to deceive Plaintiff, and did, in fact, deceive Plaintiff.

101. As a direct and proximate result of Defendants' unfair and deceptive trade practices, Advantage has been damaged, and continues to suffer additional damages, in an amount in excess of $75,000, and in a specific amount to be determined at trial.

102. Pursuant to N.C. Gen. Stat. § 75-16 and § 75-16.1, Plaintiff is entitled to treble damages, plus costs and reasonable attorneys' fees, as well as pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For judgment in favor of Plaintiff on each and every Cause of Action;

2. For damages in an amount proven at the time of trial, which are all within the jurisdictional limits of this Court;

3. Disgorgement of amounts wrongfully charged to and/or withheld from Plaintiff by Defendants and/or each of them;

4. For a declaration that the License Agreement is void, and Plaintiff owes USConnect no further duties thereunder or related thereto on the basis that USConnect has materially breached the License Agreement, thereby excusing Plaintiff from further performance thereunder, including but not limited to any provisions thereof which may apply post-termination.

5. For an award of reasonable attorneys' fees to Plaintiff, if so authorized by statute, contract, or otherwise;

6. For costs of suit incurred herein;

7. For prejudgment and post-judgment interest on any and all damages as authorized by statute, contract, or otherwise; and,

8.    For such other and further relief as the Court deems just and proper.


PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL MATTERS SO TRIABLE.


Dated: NOVEMBER 14, 2025

<div style="margin-left:40%">

*/s/ Keith P. Anthony*
Keith Anthony
N.C. State. Bar No. 28406
kanthony@morningstarlawgroup.com
Morningstar Law Group
700 W. Main Street
Durham, NC 27701
Phone: 919-590-0385
*Attorneys for Plaintiffs*

and

Mario L. Herman, Esq.
mherman@frachise-law.com
Gregory O. Herman, Esq.
gherman@franchise-law.com
The Law Office of Mario L. Herman
5335 Wisconsin Ave., NW, Suite 440
Washington, D.C. 20015
Phone: 202-686-2885
*Notices of Special Appearance to be Filed*

*Attorneys for Plaintiff*

</div>